# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23826-Civ-SCOLA

GONZALO LUJAN,

      Plaintiff,

vs.

CARNIVAL CORPORATION,

      Defendant.

_____/

## ORDER ON MOTION TO COMPEL ARBITRATION

THIS MATTER is before the Court on the Motion to Compel Arbitration [ECF No. 6], filed by Defendant Carnival Corporation ("Carnival"). For the reasons set forth below, this Motion is granted.

## Introduction

Plaintiff Gonzalo Lujan ("Lujan") filed suit in Florida state court to recover for injuries allegedly sustained in the course and scope of his employment with Carnival in 2008, 2009, and 2010. Lujan, a Peruvian seaman, alleges he was injured while working on board Carnival's foreign-flagged vessels, the M/S Imagination, M/S Triumph, and M/S Conquest. His Complaint asserts claims for Jones Act negligence, unseaworthiness, failure to provide maintenance and cure, and failure to treat. Carnival timely removed the Complaint to this Court pursuant to 9 U.S.C. § 205 on the basis that Lujan's claims are subject to arbitration. Shortly after removal, Carnival filed the instant Motion to Compel Arbitration, which Lujan opposes.

## Carnival's Motion to Compel Arbitration

Carnival argues that Lujan is required to arbitrate his claims because he signed a Seafarer's Agreement (the "Agreement") upon employment that contains an arbitration clause. Paragraph 7 of the Agreement provides that "any and all disputes arising out of or in connection with this Agreement . . . shall be referred to and finally resolved by arbitration under the American Arbitration/International Centre for Dispute Resolution International Rules," and that the arbitration shall be held in London, Monaco, Panama City, or Manila, "whichever is closer to the Seafarer's home country." Agmt. ¶ 7 [ECF No. 6-1]. The Agreement further states that all

disputes shall be decided under "the laws of the flag of the vessel on which [the] Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder." *Id.* ¶ 8.  Because this Agreement was in effect during the incidents in question, Carnival insists that Lujan must arbitrate his claims.  Under the terms of the Agreement, such arbitration would be held in Panama City (which is nearest to Lujan's home of Peru) and would be decided under Panamanian law (because the vessels in question are all flagged in Panama).

Lujan contends that his claims are not subject to arbitration because the Agreement is, for three fundamental reasons, null and void.  First, he argues that "Carnival has a system in place in which it is impossible for seaman to review and examine the terms and conditions of Carnival's arbitration agreements **before** signing them," and that he was required to sign quickly and without an opportunity to properly review the Agreement or seek advice of counsel concerning its terms.  Resp. at 6 [ECF No. 8]; Lujan Decl. ¶¶ 7-9.  According to Lujan, this system employed by Carnival violates the Seamen's Articles of Agreement Convention, rendering the arbitration clause invalid and/or unenforceable.  Second, Lujan contends that the arbitration provision is void because Panamanian law, if applied to his claims, would deprive him of all meaningful relief.  He argues that he would not be able to pursue his Jones Act cause of action in arbitration, as Panama neither recognizes such a claim nor provides an adequate equivalent. Further, Lujan maintains that Panama employs shorter limitations periods, limits maximum recovery to $50,000 per maritime incident, does not impose strict liability for unseaworthiness, and does not permit punitive damages for maintenance and cure.  Third and finally, Lujan argues that the arbitration agreement is void as against public policy pursuant to *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1123 (11th Cir. 2009), wherein the Eleventh Circuit refused to enforce an arbitration agreement requiring the application of Panamanian law because it would "completely bar [the seaman] from relying on any U.S. statutorily-created causes of action."

## Legal Standards

This Court is empowered to compel arbitration under the Federal Arbitration Act and the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 202 (the "Convention").  *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005). In determining whether to order arbitration, the district court conducts a "limited jurisdictional inquiry," which is "colored by a strong preference for arbitration."  *Id.* at 1301.

Initially, a court must consider whether four jurisdictional prerequisites are met. *Id.* at 1294.  Specifically, there must be an agreement in writing within the meaning of the

Convention; the agreement must provide for arbitration in the territory of a signatory of the Convention; the agreement must arise out of a commercial legal relationship; and a party to the agreement must not be not an American citizen, or the commercial relationship must relate to a foreign state. *Id.* at 1295, n.7.

If the four prerequisites are met, the district court must compel arbitration unless an available affirmative defense under the Convention applies.[1]  *See Alcalde v. Carnival Cruise Lines*, 2011 WL 2883287, at *2 (S.D. Fla. Jul. 19, 2011).  At the arbitration enforcement stage, these are limited to claims that the agreement is "null and void, inoperative, or incapable of being performed."  *Bautista*, 396 F.3d at 1301-02.  An arbitration agreement is "null and void" within the meaning of the Convention "only where it is obtained through those limited situations, such as fraud, mistake, duress, and waiver, constituting standard breach-of-contract defenses that can be applied neutrally on an international scale."  *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1276 (11th Cir. 2011) (citations omitted).  Arguments that the arbitration agreement is "contrary to public policy" may only be raised after arbitration, at the arbitral award enforcement stage; such defenses are not available initially.  *Id.* at 1280 (public policy defense has no application "where [defendant] seeks to enforce arbitration at the outset of the dispute").

<u>Legal Analysis</u>

Upon careful consideration, the Court concludes that arbitration must be compelled here. The four jurisdictional prerequisites are satisfied, and Lujan's defenses are not viable at this stage in the proceedings.  Any public policy arguments he has must await the outcome of arbitration, at which time they may be asserted during the arbitral award enforcement stage.  To ensure that a forum remains available to Lujan to raise any such challenges down the road, the Court will, to the extent necessary, retain jurisdiction to hear them after arbitration is completed.

**A.  The Four Jurisdictional Prerequisites**

The four jurisdictional prerequisites are clearly satisfied in this case.

First, Lujan does not dispute that there is a written agreement, which he signed, requiring arbitration of his claims.  *See Bautista*, 396 F.3d at 1300.  He does argue, however, that the arbitration agreement was not validly formed because he was rushed into signing the agreement and was not given an adequate opportunity to review it or seek advice of counsel.  According to Lujan, this violates the Seamen's Articles of Agreement Convention and renders the arbitration

---

[1]  In some circumstances, arbitration may also be avoided when the party who seeks to arbitrate has waived its right to do so.  *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011).  Waiver is not an issue in this case, however.

agreement not validly formed.   In other cases, similar arguments have been asserted as affirmative defenses, rather than challenges to the valid formation of the contract under the first jurisdictional prerequisite.  For example, in *Henriquez v. NCL (Bahamas), Ltd.*, 440 F. App'x 714, 716 (11th Cir. 2011), the seaman argued that he signed his agreement under duress, which is an affirmative defense rendering the arbitration clause null and void.  His duress argument was that "the district court should not have compelled arbitration because he did not have the opportunity to read the contract before signing it and, if he did not sign it, he would not have been allowed to stay on the ship to work."  *Id.*

In the end, it is immaterial whether this contention is treated as a challenge to a jurisdictional prerequisite or as an affirmative defense.  In either case, the result is the same; this argument is insufficient to avoid arbitration.  *Compare Bautista*, 396 F.3d at 1300 ("Although Plaintiffs claim the crewmembers did not have an opportunity to review the entirety of the Standard Terms before signing, Plaintiffs do not dispute the veracity of the signatures. Accordingly, this documentation fulfills the jurisdictional prerequisite that the court be provided with an agreement to arbitrate signed by the parties.") (citation omitted), *with Henriquez*, 440 F. App'x at 716 (enforcing arbitration despite "duress" defense). While a seaman rushed into signing an agreement without adequate time to review upon fear of losing employment surely faces "a tough choice," this does not amount to duress, nor does it mean that the agreement was invalidly formed.[2]  *See id.*; *see also Bautista*, 396 F.3d at 1302 (fact that prospective seamen face "a hard bargain during the hiring process" does not render arbitration agreement unenforceable).

Over the course of three years, Lujan signed three separate Seafarer's Agreements containing an identical arbitration provision.  Yet, as far as we know, he never once questioned

---

[2] Lujan's affidavit states that although he is a Spanish speaker, Carnival gave him the Agreement in English and not Spanish.  Lujan Aff. ¶ 15.  While he does not argue the point anywhere in his Response, one could conceive that this fact raises a question as to whether the contract was validly formed for purposes of the first jurisdictional prerequisite.  Not so, however. "In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable."  *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008).  "Persons not capable of reading English, as well as those who are, are free to elect to bind themselves to contract terms they sign without reading."  *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311, 313 (Fla. 5th DCA 1985); *see also La Torre v. BFS Retail & Comm'l Ops., LLC*, 2008 WL 5156301, at *4 (S.D. Fla. Dec. 8, 2008) (arbitration clause valid even where "[signor] has a limited understanding of the English language and is an unsophisticated individual"); *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1523 (S.D. Fla. 1995) (parties may not avoid contract because "their English was 'not very good' at the time they executed it").

the terms of the Agreement, nor asked for it to be explained to him.  Under such circumstances, Lujan's signature manifested his assent to the entire Agreement, and he is bound by it. *See Bautista*, 396 F.3d at 1301 ("In the limited jurisdictional inquiry prescribed by the Convention Act, we find it especially appropriate to abide by the general principle that '[o]ne who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation.'"); *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008).  Thus, the first jurisdictional prerequisite is satisfied here.

Turning to the second, the Agreement provides for arbitration in the territory of a signatory of the Convention, as it indicates that arbitration shall take place in London, Monaco, Panama City, or Manila.  The United Kingdom, Monaco, Panama, and the Philippines are all signatories to the Convention, satisfying the second prerequisite.  Neither party disputes this fact.

Third, the Agreement arises out of a commercial legal relationship.  Indeed, the Eleventh Circuit has held that seafarer agreements requiring arbitration may be so categorized. *See Bautista*, 396 F.3d at 1300 ("The crewmembers' arbitration provisions constitute commercial legal relationships within the meaning of the Convention Act.").

Fourth, a party to the agreement is not an American citizen, satisfying the final jurisdictional prerequisite, because Lujan is a citizen of Peru.

Thus, the four jurisdictional prerequisites are satisfied.  As such, the Court must compel arbitration unless any affirmative defenses apply – a matter to which the Court now turns.

### B.  Affirmative Defenses

Lujan fails to raise any affirmative defense that would permit him to avoid arbitration at this stage.  Lujan makes two arguments[3] in the nature of an affirmative defense.  He contends that application of Panamanian law will deprive him of all meaningful relief because Panama will not recognize his Jones Act claim, the applicable statute of limitations is shorter in Panama than in the United States, Panama limits maximum recovery to $50,000 per maritime incident, Panama does not impose strict liability for unseaworthiness, and it does not permit punitive damages for maintenance and cure.  He also argues that the arbitration agreement is void as against public policy pursuant to the Eleventh Circuit's decision in *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1123 (11th Cir. 2009).  These arguments go hand-in-hand and really only raise a

---

[3] As noted above, Lujan framed his first argument – that he was rushed and did not have sufficient opportunity to review the Agreement's terms – as a challenge to the contract's formation, not as an affirmative defense.  Whether this argument is more properly considered as one or the other is immaterial, however.  In either case, the argument fails; it will not defeat Carnival's right to arbitrate.  *See Henriquez*, 440 F. App'x at 716; *Bautista*, 396 F.3d at 1302.

single affirmative defense.  Both essentially ask the Court to declare the arbitration provision unenforceable on public policy grounds because Panama law, if applied to Lujan's claims, will defeat meaningful recovery and deprive Lujan of available remedies under United States law.

This path of argument leads to a dead-end, however.  Public policy arguments apply only at the arbitral award enforcement stage and not at the arbitration enforcement stage at issue here. As noted at the outset, the only available affirmative defenses at the arbitration enforcement stage are that the arbitration agreement is "null and void, inoperative, or incapable of being performed."  *Bautista*, 396 F.3d at 1301-02.  An arbitration agreement is "null and void" within the meaning of the Convention "only where it is obtained through those limited situations, such as fraud, mistake, duress, and waiver, constituting standard breach-of-contract defenses that can be applied neutrally on an international scale."  *Lindo*, 652 F.3d at 1276.  To be viable at the arbitration enforcement stage, a defense must be subject to neutral application on an international scale.  *Bautista*, 396 F.3d at 1302.  Public policy arguments are just the opposite – "by definition [they] cannot be applied 'neutrally on an international scale,' as each nation operates under different statutory laws and pursues different policy concerns."  *Lindo*, 652 F.3d at 1278. Accordingly, Lujan cannot avoid arbitration on any public policy basis.

Lujan does attempt a somewhat creative end-run around this outcome.  He argues that *Thomas* controls here and, under *Thomas*, the arbitration provision cannot be enforced.  To be sure, "*Thomas* crafted a new public policy defense, providing that arbitration is unenforceable if foreign law applies because the plaintiff cannot assert U.S. statutory claims."  *Lindo*, 652 F.3d at 1274.  In *Lindo*, however, the Eleventh Circuit found that *Thomas* was a departure from prior precedent in *Bautista* and that it was therefore not governing law of the Circuit under the prior-panel rule.[4]  *Id.* at 1278.  Accordingly, *Thomas* is dead-letter in this Circuit.

Yet Lujan argues that *Thomas* lives on.  He contends that before the Eleventh Circuit issued its mandate in *Lindo*, the parties to that case settled and, under controlling precedent, when a case settles before the end of the appellate process, any opinion that has been produced should be vacated.  Resp. at 15 (citing *Flagship Marine Servs., Inc. v. Belcher Towing Co.*,

---

[4] The prior-panel rule is familiar to most jurists.  It holds that a panel of the Eleventh Circuit, or any court of appeals, is bound by earlier panel holdings unless and until they are overruled *en banc* or by the Supreme Court.  *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1258 (11th Cir. 2011).  Under this rule, "consistency with earlier decisions is everything."  *Hurth v. Mitchem*, 400 F.3d 857, 862 (11th Cir. 2005).  Therefore, any intervening panel decisions that depart from the prior panel's earlier holdings are not to be followed. *See Walker v. Mortham*, 158 F.3d 1177, 1189 (11th Cir. 1998); *Hurth*, 400 F.3d at 862.

23 F.3d 341 (11th Cir. 1994)).  Review of the docket in *Lindo* does indeed reveal that the parties settled after the opinion was released, but before the mandate had issued.  The panel opinion was released on August 29, 2011.  The parties notified the Court of settlement on October 3, 2011, by motion to dismiss the appeal as moot.  But, on October 13, 2011, the Court denied that motion.  Subsequently, on October 20, 2011, an amicus party attempted to file a paper styled as an emergency motion to vacate the panel opinion based upon settlement, but the clerk of court returned the motion unfiled a day later with a letter stating that the Court has no provision to file such a document.  That same day, October 21, 2011, the mandate issued.  It was entered on the district court docket a week later, on October 28, 2011.

While recognizing that certain cases, such as *Flagship Marine*, do state that panel opinions should be vacated where the parties reach a settlement prior to issuance of the mandate, there are other cases, from a higher authority, that also say vacatur is not typically available where mootness results from settlement of the parties.  *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994).  As the Supreme Court has noted, "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur."  *Id.* at 26 (citation omitted).  "[T]he determination is an equitable one," *see id.* at 29, and in the case of *Lindo*, the Court of Appeals must have found vacatur inappropriate.[5]  This Court need not speculate on the Eleventh Circuit's motivations.  In short, all that matters is that the panel did ***not*** vacate its opinion, the mandate ***was*** issued, and subsequent panels of the Eleventh Circuit have regarded *Thomas* as dead-letter and *Lindo* as law of the land.  *See Maxwell v. NCL (Bahamas), Ltd.*, 2011 WL 4928737, at *1 (11th Cir. 2011); *Henriquez*, 440 F. App'x at 716.  Courts that have not heeded *Lindo*, have been reversed.  *See Maxwell*, 2011 WL 4928737, at *1 (reversing district court that applied public policy defense at the arbitration enforcement stage).  This Court is not interested in a similar fate.  Accordingly, Lujan's argument, creative as it may be, is ultimately unavailing.  Arbitration must be compelled here.

---

[5] Given the *Lindo* panel's determination that *Thomas* was an unwarranted departure from prior precedent, it should come as no surprise that the equities would counsel against vacatur. The Court of Appeals may have reasonably concluded that the *Lindo* decision was necessary to set the law of the Circuit straight and that it would prevent further confusion and error among the lower courts.  *Cf. Fernandes v. Holland Am. Line*, 810 F. Supp. 2d 1334, 1336 (S.D. Fla. 2011) ("The question posed in this case has divided the Judges of this District since the Eleventh Circuit decided *Thomas*.").

<u>**Conclusion**</u>

For the reasons explained above, this dispute must be resolved in arbitration under the parties' Agreement.  The four jurisdictional prerequisites are satisfied and there is no affirmative defense available to Lujan at this stage in the proceedings.  To ensure that a forum remains available to Lujan to raise any available affirmative defenses after arbitration, the Court will, to the extent necessary, retain jurisdiction to hear those challenges at the appropriate time.

Accordingly, it is hereby **ORDERED and ADJUDGED** that Carnival's Motion to Compel Arbitration [ECF No. 6] is **GRANTED**.  All remaining pending Motions are **DENIED AS MOOT**.  The Clerk is directed to **CLOSE** this case.

**DONE and ORDERED** in chambers, at Miami, Florida on April 2, 2012.


**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Designated U.S. Magistrate Judge
Counsel of record